Case number 145860, Reno, Louisiana, United States of America. I represent Mr. Avelino Cruz-Martinez. I'd like to reserve three minutes for rebuttal, please. All right. Now, this appeal challenges the certification of Mr. Cruz for extradition to Mexico. Article 7 of the Extradition Treaty between the United States and Mexico prohibits his extradition if an American law relating to the lapse of time would bar the prosecution of the charged offense here. Now, Mexico made three unusual or noteworthy decisions that wind up triggering Article 7. First of all, immediately local authorities and the court wrote an agreement to resolve the matter, and giving Mr. Cruz the impression that the matter was closed. Well, he murders two people, and then they pay 50,000 pesos to the widow of one of the deceased? Your Honor, it's civil. He skips town. He didn't, well, this is the whole problem. We do not know if Mr. Cruz murdered someone or not, or if he acted in self-defense. Sounds like they're eyewitnesses. I mean, you know, we're not trying, of course, the fact, but there's certainly probable cause here, isn't there, to think your client's maybe a bad hombre? There's probable cause that he committed a crime because there were two people dead, and two people said that he did it. There are a lot of unusual gaps in the case. There's 200 people in this village, and no one gave any reason for why it would have happened. There's only two witnesses, and it is New Year's Eve. And is that why they celebrate New Year's Eve? Well, basically, it could have been self-defense. I mean, that's the obvious conflict here, that it could have been self-defense. Well, no, because he's charged with murder with undue advantage, meaning he had a weapon and the others presumably didn't. That's what the charge is, Your Honor, but, I mean, his defense would be self-defense, and, in fact, his family was harassed by the other family. Well, but, I mean, I assume this isn't your main argument, that he didn't do it, right? No, Your Honor, but the authorities did close the matter, and then they— Wait, close the matter? What do you mean by that? I mean, they have an arrest warrant.  Wait, the agreement wasn't with the authorities, was it? I thought it was the parents and the brother, I mean, the families got together and mediated. Yes, Your Honor. Well, the court wrote, according to the agreement, the court drafted the agreement. A town clerk who's described as an authority witnessed it and brought it together and told the parties the matter was closed. And yet the Mexican prosecutor issued an arrest warrant two months later. And then the relative nonetheless went back to the court and got an arrest warrant issued, yes. But it was not for premeditated murder, which the facts alleged by that relative sure would suggest premeditation, but that is not what the prosecutor even agreed to charge. Well, let's just take you then to the five-year statute of limitations federal analogy. But even that one, you're allowed to toll if there's an indictment or information. And we know that when we do this kind of thing, we're allowed to look for analogies. We don't ask ourselves just whether both criminal justice systems are exactly the same or use the same words. We have to apply functions. And so functionally, it looks like an arrest warrant would toll. So even if you're right about it being the five-year one, it has an exception or a tolling provision that, it seems to me, it doesn't seem that unusual to apply it here. I understand that the Ninth Circuit has said that an arrest warrant in Mexico would count as indictment. Our second argument is about the speedy trial clause. And there can be no doubt that the clause, the Constitution, is a law. And under the ordinary meaning of the phrase lapse of time, the speedy trial clause would be a law that relates to the lapse of time,  Yet the only appellate case on this point, the Yap case from the Eleventh Circuit, holds against you, doesn't it? That's right, Your Honor. Including, I would say, the dissent. I think Chief Judge Carnes, the way he looks at the case, would not be helpful here given the difference in the treaties. Ultimately, that is true, Your Honor. I think Judge Carnes's decision supports us on the idea that, yes, the Constitution, the Sixth Amendment, is a law. He does hang his hat on the special language in that treaty that doesn't exist here. And that is a difference, Your Honor. And we would have to go back to the Maillones case, the district court case involving Greece, where the judge addressed language very similar to this. Yeah, but there's no explanation. And when it comes time for an explanation, the Eleventh Circuit doesn't buy it. That's right, Your Honor. These issues are very rarely litigated. And, I mean, there is only one circuit. There's an intuition for me. I mean, to put my cards on the table, it hurts you. But the intuition, I mean, I get the idea that lapse of time, theoretically, can pick up lapses of time before indictments and lapses of time after indictments before trial. So I get it. It seems like, you know, whether it's the Speedy Trial Act, the statute, or the constitutional guarantee, there's so many features to it in terms of when you have violations. I mean, there's just one exception after the other. Statute of limitations have exceptions, but they're pretty straightforward. I mean, the key thing is how long, five years? And then is there a tolling mechanism? There's just those two questions, and there's very few types of tolling. And on speedy trial, there's so many different things that can toll. And it's very weird to apply it to a foreign setting. I don't know. It's got so many American components to it that it seems very hard to translate. Well, Your Honor, there's bound to be difficulties in translation in all of these. Because, I mean, Mexico, for example, I think it's Article 88 that lists at least six or seven methods of tolling. And it also has, I think it has Article 89. And Article 88, you know, they have a different mechanism for stopping it and then restarting it after the arraignment and then stopping it at the verdict and starting it again. So each country does have a lot of different laws, I assume. Tell me why. How do you distinguish the YAT case? Why shouldn't we just say, hey, Yap was right and that's it? Your Honor, well, I can't distinguish it, but I could. Tell us why at all. My argument is it's wrong, Your Honor, because, well, first you start with the ordinary language of the statute, which is lapse of time. And I've cited some materials in the reply brief where lapse of time is coupled with laws and concepts, you know, the legal concepts that go beyond statute of limitations, laches and speedy trial clause, for example. Now, also there's, you know, there's two types of clauses at least used in treaties. I cited at least ten, maybe a dozen other treaties that say barred by limitations instead of barred by a law regarding lapse of time. That is a different clause. The barred by limitations clearly limits itself to statute of limitations. This is a broader clause. And even especially in the history of the U.S.-Mexico treaty, the U.S.-Mexico treaty used to use the barred by limitations language. That's the 1899 treaty? That's right, Your Honor. And this treaty is from 1979. 78. Yes, Your Honor, I don't quite understand the nuances of all that. I think it's maybe agreed by the parties in 78 and ratified in 79. But in any event, the new U.S.-Mexico treaty is after Milonis when, you know, I'm in the State Department. It's clearly aware that the court in 1960 said this clause, which is basically the same as the one that they got put into the U.S.-Mexico treaty, covers the speedy trial clause. So under that logic, the State Department bargained for this. Maybe this is something I just didn't appreciate and should remember, but you're only relying on the speedy trial clause of the Constitution but not the Speedy Trial Act? Yes, Your Honor. And if so, just remind me why. That's not obvious to me. Well, we're relying on it because it applies. No, no, but why doesn't your argument extend to the speedy trial statute is all I'm asking. Is there something I'm missing? They're both lapses of time laws. Well, Your Honor, that has not been brought up before. I haven't thought that through. And I'm not sure, Your Honor, I haven't analyzed this case from the angle of how the Speedy Trial Act would apply to it. But there's nothing about, I guess it sounds like there's nothing about your argument that wouldn't extend to the Act as well. Well, that's true, Your Honor. So I'm trying to figure out which way that cuts. Yeah, I'm not quite sure. There wouldn't be a lot of detailed analogies to be drawn between what's called the speedy trial act. It seems to me if one applies, the other applies. And it seems to me, just practically speaking, that's just the way it works in a federal case, an American case. You have to apply to both. You just apply both, and they apply differently sometimes. I mean, there are very detailed. I mean, part of the government's argument does get very, in fact, intensive. They claim that Mr. Cruz was a fugitive. And that does require looking at a lot of details and not just saying, you know, as the government likes to say, well, the statute of limitations argument would just be a matter of math. Well, it's not here, even in their argument. They're looking at, you know, did Mr. Martinez intend to flee? Did he conceal his whereabouts? Even their argument about why there should be tolling goes far afield of just the simple question of math and looking at dates and so forth. Now, if we're looking at latches, do we have enough information to really reach a conclusion as to the potential prejudice to your client from the delay? Your Honor, we rely on Doggett and the idea that after six years you can presume prejudice. And so, no, there is not evidence to the record. That's a constitutional case, right? Yes, Your Honor. And in that case, there was a delay of eight and a half years, but the Supreme Court said that, you know, a period six times as long as the, basically they said a period over six years you would presume prejudice. And that's what we're relying on. I know you're out of time, but did you want to say anything about the Brady issue? Your Honor, yes, I would. We've been trying to get something unusual happen, and I don't know why. In 2009, the U.S. Embassy sent a fax to this court in Silicayo Pond and said, you know, what's the status of this charge against Mr. Avelino Cruz Martinez? And I believe that something important may have passed between the governments at that point. That was three or so years into the process. And, you know, after that, Mr. Martinez got a citizenship. He traveled to Mexico a couple times and met with U.S. consular authorities. And we haven't been able to get those documents or any statement other than just, well, there's no exculpatory material.  Of course, if we hold that the Sixth Amendment speedy trial clause doesn't apply under the treaty, then Brady doesn't have anything to do with it. If we hold to the contrary, then Brady would be an issue. Yes, Your Honor, there are ways that you could find that whatever these governments, the cause for delay wouldn't matter, I suppose. But I think this would shed some light. If we decide that lapse of time only refers to statutes of limitation, right, that that would be the end of the extradition proceeding. Probably so, Your Honor. If your decision turned on whether he's a fugitive or not, I could see that maybe some of these communications would turn on that. All right. Thank you. Your Honors, there are three main issues before this court. I will primarily address opposing counsel's points, first starting with whether extradition was barred by the lapse of time under United States law. It's our position that appellate's extradition is not barred by the lapse of time, as it is not barred by United States statute of limitations. And there's been some discussion that the five-year toll may apply. However, our first position is that this is closely analogous to premeditated murder. But don't we look to how he's ultimately charged? That's certainly a consideration, Your Honor. But according to case law, although there's no Sixth Circuit controlling case law, we've got the Ninth Circuit to look at where Justice Kennedy has looked at this issue and stated for the purposes of international extradition from the United States, murder is a capital offense. And if the extraditee is charged abroad with murder, then no statute of limitation applies for purposes of federal law, regardless of the precise nature of the conduct of the underlying charge. But you take that a step further in... He doesn't say regardless of how the foreign country actually charges the person, does he? He does not, Your Honor. Isn't that the key point here? It is. Ultimately how it's charged, it doesn't look... It is, Your Honor. I would refer the court to Cleary v. Gregg, where the courts focus on the nature of the conduct. That is cited in my brief. And we would reiterate our position that based on that and the Ninth Circuit that you do also look to... That almost sounds like for us to do this accurately, we have to have a hearing and get witnesses as to what actually happened in this murder. It seems like a pretty bad idea. I agree that would be a very bad idea, but we've got sufficient evidence before the court with these two eyewitnesses that specifically detail the premeditation that Avelino Cruz Martinez did when he got out of his truck, parked it, left the car running, walked in, went to shake the hand of one of the first victims, and he pulled his arm, pulled a gun out of his holster, and shot him. The premeditation is it developed, but he came here with a gun, left his truck running, and immediately fled after that happened. We would argue also that the facts are there sufficient to show that there was... Isn't it the most respectful thing in terms of respecting sovereign authority of other countries to respect how they charge it and what they decide to do with it? That's certainly a consideration, but we've got the elements that are required by Mexican law to satisfy this aggravated with an aggravated... If we decide that the arrest warrant in Mexico tolls the statute of limitations, you don't have a problem anyway. You don't have to go with this premeditated murder business, do you? No, Your Honor, that's exactly correct, and we stand on if there is a tolling period that we have the two ways that we satisfy that, the arrest warrant being the first when it was issued less than two months after the offense occurred, and second that the appellant was in fact a fugitive when he fled Mexico back in 2006. Right, but it sounds like he wasn't a fugitive in the U.S. He wasn't hiding and moving from place to place. He had a permanent residence, didn't he? That's an accurate statement, Your Honor, but we've cited in our brief case law where he is still a fugitive. He is still a fugitive from justice from Mexico when that arrest warrant was issued. Being open and living out in the open in the United States, he is still necessarily a fugitive from justice by having fled Mexico. Tell me this. Why did Mexico wait six years? I mean, I guess if February of 2006 was the arrest warrant, it wasn't until May of 2012 that they invoked the treaty. I'm not privy to that information, Your Honor. My understanding is that we haven't inquired into that and that we have no intention of doing so because we don't want to question why Mexico does things the way that it does as long as it satisfies the requirements of the extradition treaty, which it did here. Well, but that's the question. The treaty says that no extradition is allowed if due to lapse of time under the laws of either country you can't prosecute them. If we decide that the Speedy Trial Clause applies, there's going to be a serious question of whether he can be prosecuted in the U.S. and Mexico agreed to that in the treaty. I agree with Your Honor's assessment. That would cause problems, but the United States' position as set forth in our briefs is that the Speedy Trial Clause does not apply in this case. Tell me why. We're relying on YAP, as was previously discussed by the court. What do you make of the fact that the 1899 treaty between Mexico and the U.S. talked about limitations and that 1978 talks about lapse of time? Doesn't that make it sound like lapse of time is broader than just statute of limitations? It's our position that it's not, and if that were the case that it would have been sufficiently stated. It's nowhere documented, and it's interpreted as that transition still lapse of time means it's a term of art in these extradition proceedings. That means it is the statute of limitations. What authority can you cite me that it's a term of art? Your Honor, I'm going to have to find that for the court in a post-hearing brief. I apologize. But it's been interpreted as a term of art in the review of the change that was made from the treaty. I don't know. I'm looking at this restatement of foreign relations law. Yes, Your Honor. Part of that says that I'm looking at lapse of time. No general rule of international law limits the time within which a claim can be made. However, international tribunals have barred claims because of a delay in presentation to the respondent's state if the delay was due to the negligence or lashes of the claimant's state. That makes it sound like that lapse of time doesn't mean always just statute of limitations. Apparently, it can be due to negligence or lashes. I would go back to the decision that specifically references the lapse of time But we're not in the Eleventh Circuit. I understand, Your Honor. Unfortunately, there's no controlling case law on this issue in the Sixth Circuit, but we look to YAP where it states that it does, in fact, and has been interpreted as statute of limitations is what the lapse of time is. I've read YAP. I know what it says. I'm just not convinced yet that it's right. I mean, what about Mr. Hawley's point that the Malonis decision from, what, Northern District, Alabama in 1960 said the opposite and gave no reasoning, but his point is that, hey, when Congress, State Department, I mean, negotiated this new treaty in 1978, the only law in the whole country out there about whether lapse of time included the Sixth Amendment, that Malonis case said it did, and that Congress, presumably, or State Department must have known that that was the only interpretation out there at the time. Well, I think that it's important that it hasn't clarified any different. We've got this case now that's much more recent than that 1960 case that says to the contrary, which is interpreted as the statute of limitations. Right, but the State Department didn't know about YAP at the time. I understand Your Honor's point. I find this very difficult, and there's really not much law out there, is there? No, Your Honor. But I must say that if somebody said to me, what does lapse of time mean? I would think, well, lapse of time could be a statute of limitations, certainly, but lapse of time could also be failure to timely prosecute. I mean, that's a lapse of time. It is, Your Honor. In the Naugat case, six years is presumptively prejudicial. It is, but we look at, in this specific case, the appellant and his fugitive status and the fact that an arrest warrant was issued within two months of the crime occurring. Oh, I understand. Well, that's the equivalent of an indictment. So let's say he's indicted. That tolls the statute of limitations. But even after someone's been indicted, so there's no longer a statute of limitations problem, if the government sat on it, if this were just a U.S. prosecution and sat on the case after he was indicted for six years before they decided, all right, let's go ahead and get a trial, he'd certainly be raising a speedy trial claim, wouldn't he, under the Sixth Amendment, as well as the Speedy Trial Act. He would, Your Honor, but if you're looking at whether the speedy trial would apply in this specific case, any speedy trial violation argument is insufficient on its face because it requires two things, intent of prosecuting agency to be advantaged, and second, actual prejudice, which this appellant has not and cannot show at this point for purposes of extradition. Maybe we'd have to have a hearing on that. I mean, we don't know the facts, so maybe he can show prejudice. But that's the United States' point. For purposes of extradition, he can't. We have insufficient information for him to establish that. Well, we could direct the district court to have a hearing on that. You could, Your Honor, but we go back to YAP and hope that this court will follow that decision and not order that the Sixth Amendment clause or act apply in this case. I'm curious. So I'm remembering correctly, I think that the Speedy Trial Act is incorporated and applies to the states, right? And so there must be a lot of authority out there about what happens when, you know, Ohio, someone violates a law in Ohio and then leaves the state. And, you know, it's just like this case. They're living in the open, but they're in another state. And so the state has to get process over them because that's what's going on here. I mean, the thing that they delayed on is not filing the extradition papers earlier, right? Because that's how you get them back and that's how you move forward with the prosecution. So what does the Speedy Trial Act cases say in states versus states? Do they say, well, you know, if you leave the state, buddy, I don't care whether you're living in the open or not. That exempts you. You know, you fled. It's not fugitive status. You fled. And do you know? I just wonder if that's worth looking at because that seems to me quite analogous here because the point isn't the normal prosecutorial delays. This is someone who's outside the country. So that's not a normal criminal case at that point. Forget fugitive status for a second. They're just out of the country. So you have this trigger that you need of the request for extradition, which sounds – it's, of course, simpler in the U.S., but I just wonder what the cases say. I don't happen to know. That might be worth looking at. Yes, Your Honor. Because if there's a – if that delays the clock, which would not be shocking to me – in other words, it's very hard to bring a speedy trial claim after you've been charged and then you flee. And even if you're living in the open somewhere else, I'd be kind of surprised that the clock keeps running when you're outside the state having fled. And if that's true, that would seem to suggest they lose even if it does apply because it's the Constitution he's relying on, not the statute. Great. As far as living out in the open, Your Honor, I would just follow up with if we reverse this and we have a United States citizen who leaves – similar facts – happens in the United States and then flees to Mexico, him living out in the open in Mexico would not be an easy task for the United States to find out where he's living and go get him. I understand Your Honor's point. Can you explain in the phone book here? I don't know the answer to that, Your Honor. In fact, we would not have known to be looking for him until we were provided with the information and the request. No, but the – I mean, I think the point you're making is Mexico wouldn't have had much difficulty. Right. It is, Your Honor. I don't know whether an inquiry was made, whether the information was listed in the phone book or not. But in our brief, we do cite case law regarding living out in the open is insufficient to say that you're not a fugitive. Mexico almost certainly knew he had gone back to the U.S. I mean, they knew his truck had a Texas license plate, right? Yes, Your Honor. But he shortly thereafter moved to Tennessee. The last they saw and knew was there were Texas plates on the red truck that he was driving. It's such a clever plan, he thought. They'll never find me even living out in the open in Tennessee. That's the real wilds, right? I don't know. I understand Your Honor's point. With regard to this discovery request, the United States position is that the appellant's request is speculative at best. He says that this may exist, there is some documentation that may exist, simply because there was an inquiry with the consular office in the United States to Mexico. We have no reason to believe that any of that information would produce exculpatory materials that would undercut the probable cause in this case, which the appellant has conceded exists. If Your Honor's happy. Is there some rule of construction? So we know that the Constitution doesn't apply. When you commit a crime abroad, it's kind of tough luck. You chose to commit the crime abroad. You can't, even though you're an American citizen, say that the U.S. Constitution protects all these rights with respect to how you'd be tried there. So that's the backdrop to this treaty. But then the treaty allows both countries to create their own set of rules and incorporate or not incorporate their own laws. Is there any presumption one way or the other? I mean, is there a presumption? Well, it's a U.S. citizen, so the presumption is if you're not sure, you add rights. Or I could say it's just the opposite. It's about two different countries, and you should be very careful about adding rights because of the risk of disrespecting the other country. Is there a presumption one way or the other on this? I don't know the answer to that, Your Honor. I don't know the answer. I apologize. I don't either. If there are no further questions, thank you, Your Honors. Thank you. I believe it's very significant that the government, with access to the State Department and everything, has no real concrete explanation for why a lapse of time is a term of art. If it were, extradition treaties have been negotiated for, I guess, a couple centuries now. You would think they would be able to point to something concrete and meaningful about why this is a term of art, so clearly a term of art, that you should leave the plain language of the treaty to adopt it. But maybe it's not a term of art, but why not just be simplest about it? And the simplest view would be the limitations period because that's the thing most often in these treaties. I mean, that is, I think we have to agree, that is the more likely backdrop norm. I mean, you can say lapse of time is before prosecution, after prosecution of trial, after trial before you go to jail. I mean, you can start dividing this up in lots of ways, and it seems like the simplest answer is limitations period. It may be the most common, but there's no, going back to rules of construction, I mean, there's no rule of construction that says you should limit this to as narrow as possible. Is there a rule of construction either way on this point, that you do it in a way that helps the American citizen or you do it in a way that respects the foreign country? No, Your Honor, I mean, there's a couple rules out there. One is the ordinary meaning for the purposes of the clause. This clause, of course, is a protective clause, Article 7. Is my intuition right about the Speedy Trial Act when you have someone who's been indicted in a state, so the clock starts ticking, they flee, but for purpose of my hypothetical, they're not a, quote, fugitive, or whatever they are, they're findable. They're living in the open but in another state. Is it really the case that they can, the time they're outside of the state counts in their favor on speedy trial? I'm not sure about state law, Your Honor. No, no, no, Constitution. I'm talking about the same Constitution you want to apply here, and it seems like a good analogy. Well, I think it must not be. On pages 36 and 37 of my first brief, I cited two cases, one's Duff and one's Judge. I believe they're speedy trial cases. It's about whether someone's a fugitive, and these people left the country, and the United States easily could have said, hey, you've got a charge over here, get back here, and they didn't. And in those cases, they were not fugitives. Those sound like cases about the definition of fugitive, right? Yes, Your Honor. And I'm just saying, I mean, you know this law. I mean, don't you think if you leave the state after you've been indicted, whether you're a fugitive or not, it's a pretty uphill climb to say the time you're out of the state counts in your favor for constitutional speedy trial purposes? I have to say, I haven't dealt with state charges, so I'm not really sure about that. But, I mean, in no way was Mr. Cruz, you know, if Mr. Cruz, let's say he had been a citizen of Japan who's a lawful permanent resident of the United States and annually vacations in Mexico, and a week into his trip in Mexico he had an accident, ran over a child, paid his way to get out of there, came back to his lawful permanent residence in the United States, no one would ever say that he fled Mexico and is hiding from Mexico. Just like that, Mr. Cruz just returned to his lawful permanent residence. I think I'm simple. I've got this very basic proposition. Whatever the speedy trial act, constitution, or anything else related to prosecution charged to actual criminal trial, it never counts when you are voluntarily out of the country. In other words, how can you possibly complain about not getting a quicker trial when you're not there? That's a very bizarre theory. I think the cases on 36 and 37 might address that, Your Honor. Those people were out of the country, and nonetheless they were found not to be fugitives. I'm sure the underlying issue must have been was the time still running. But that would have been limitations probably. Those are probably limitations cases. That's right. Okay, so I'm talking about someone who's complaining. I've been indicted, and I want my trial. That's the whole point of that clause. That makes no sense to take advantage of leaving, whether voluntarily, involuntarily, in hiding or not. I just can't imagine a court saying, hey, good for you. The clock's run. I believe in Doggett the defendant was out of the country. If I'm not mistaken, I thought he was out of the country, and they thought he was going to be serving a sentence for a long time, but nonetheless he didn't, and he came back to the country. And he got the time while he was out of the country to count in his favor. Yes, sir. All right. Well, that's a perfect answer if it's true. Thank you, Your Honor. Thank you. The case is submitted. There being no further cases of moral argument, you may adjourn court.